STATE OF IOWA, Appellee, v. CLYDE H. MILLER, Appellant.

No. 42065.

January 16, 1934.

Rehearing Denied May 19, 1934.

Roy E. Montgomery and Sidney J. Dillon, for appellant.

Francis J. Kuble, Assistant County Attorney, and Edward L. O'Connor, Attorney-general, and Walter F. Maley, Assistant Attorney-general, for appellee.

Evans, J.—Up to August 10, 1931, the defendant had been in the employ, as bookkeeper, of a certain department store known as the "Globe Incorporated". On August 10, 1931, he presented to the Valley National Bank a check upon the Bankers Trust Company for $1,500 drawn to the order of said Valley National Bank. The amount of the check was paid to him by an official of the payee. The defendant thereupon disappeared. On the 25th day of September, 1931, an indictment was returned against him. He was apprehended and brought to trial. The following is a copy of the indictment:

"Count I.

"The Grand Jury of the County of Polk, in the State of Iowa, accuse Clyde H. Miller of Forgery, and charge that Clyde H. Miller

forged a certain instrument described and referred to in Count II of this indictment, and which was written in the following words and figures, to-wit:

"The Globe, Inc.
"Department Store
"Corner Fourth and Walnut

"No. 4564

"Des Moines, Iowa, Aug. 10, 1931.

"Pay to the Order of Valley National Bank $1,500.00 Fifteen Hundred Dollars

"Bankers Trust Co.
"33–64 Bank 33–64
"Des Moines, Iowa.

"The Globe, Inc.
"By Fred Blotcky.

"Count II.

"The Grand Jury of the County of Polk, in the State of Iowa, accuse Clyde H. Miller of Uttering a Forged Instrument and charge that Clyde H. Miller uttered as genuine a forged instrument, purporting to be a bank check, which is the same instrument described and referred to in Count I of this indictment, and which was written in the following words and figures, to-wit:

"The Globe, Inc.
"Department Store
"Corner Fourth and Walnut

"No. 4564

"Des Moines, Iowa, Aug. 10, 1931.

"Pay to the Order of Valley National Bank $1,500.00 Fifteen Hundred Dollars

"Bankers Trust Co.
"33–64 Bank 33–64
"Des Moines, Iowa.

"The Globe, Inc.
"By Fred Blotcky."

Before the trial, the defendant filed a motion to require the prosecution to elect upon which count it would proceed. This motion was predicated upon the ground that the indictment was bad for duplicity and in violation of section 13737. This section is as follows:

"13737. The indictment must charge but one offense, but it may be charged in different forms to meet the testimony, and, if it may have been committed in different modes and by different means, may allege the modes and means in the alternative."

The response to the motion was that the alleged duplicity was permissible under section 13738-b1, subdivision 3, thereof. Said section provides as follows:

"13738-b1. An indictment may charge in separate counts: * * *

"3. The forgery of an instrument and the uttering and publishing of said forgery when both offenses are committed by the same person, or * * * *"

The defendant's motion was overruled.

When the state rested its evidence, it moved for a dismissal of count 1 of the indictment on the ground that it had produced no evidence in its support. The motion was sustained by the court over the objection of the defendant. The ground of the defendant's objection then made, and now urged on appeal, was, and is, that the effect of section 13738-b1 was to reduce the two offenses into a single offense, and that such single offense must be proved in its entirety in order to convict the defendant; that the failure to introduce evidence of the forgery of the instrument by the defendant was destructive of the entire case and rendered the trial court without further jurisdiction in the premises. We think the two sections here quoted will not bear the interpretation thus put upon them. Section 13738-b1 does not purport to merge into one offense that of forgery and that of uttering the forged instrument. On the contrary, it expressly deals with them as separate offenses and permits them to be pleaded in separate counts in the same indictment. By its dismissal the state eliminated the first count and the accusation made therein. By its voluntary withdrawal, the state simply anticipated the right of the defendant to move for a dismissal on the same ground. The fact that the state acted voluntarily and without waiting for an attack by the defendant could not operate to the prejudice of the defendant. The voluntary dismissal by the state necessarily left the prosecution as pending upon the second count only. The objective of the defendant in his argument here is to show that the prosecution fell when the first count was dismissed. We think the argument is not tenable. After the dismissal the prose-

cution of the defendant was confined to the single charge in the second count. This left to the defendant no grievance of prejudice. It is true that the second count alleged that the instrument uttered by the defendant was the same instrument set forth in the first count,—the forgery of which was charged therein to the same defendant. In view of the dismissal, we think the foregoing language became mere surplusage in the second count. We hold that the indictment, as originally drawn, charged the defendant with two offenses and not one; that it was good on its face as coming under the provisions of section 13738-b1; that the voluntary election by the state to dismiss the first count did not bar the state from continuing its prosecution under the second count.

It is not correct to say that the defendant was indicted under section 13738-b1. That section is purely procedural. It does not define any offense. It operates solely as an exception to section 13737. It was applicable only if, and when, the state sought to obtain a conviction for both offenses in one prosecution.

II. It is contended by the appellant that there was no proof of the forgery; and, further, that there was no proof that the defendant knew of the forgery. Many of the assignments of error and the exceptions to the instructions are predicated upon this contention. As to the proof of forgery, the signature forged, if any, was "Fred Blotcky". Blotcky testified, as a witness, that the signature was not his and was never authorized by him. The signature, if valid, was effective to call for $1,500. We do not know how evidence could be more to the point than the evidence of this witness. It was clearly sufficient to go to the jury. On the question of whether the defendant knew that the signature was forged, it was made to appear that the body of the check comprising the name "Valley National Bank" and the figures "$1,500" was in the handwriting of the defendant. This was a very significant circumstance. It was sufficient to permit the jury to infer that he drew the check alleged to be forged. This circumstance permitted the inference by the jury that he was present when the forgery took place. There is the further circumstance that he told the Valley National Bank, where he presented the check, that he was obtaining the money for the purpose of use as change at the store of his employer. This was a false statement. He did not thereafter appear at the store, but disappeared from the locality. We think the evidence was abundant

to support the verdict finding that, when he uttered the check, he knew that it was forged.

III. It is urged that section 13738-b1 is unconstitutional in that the legislative chapter in which it was contained comprised two subjects. The two subjects comprised subsection 3, which we have above quoted. It further comprised a proviso regulating the number of peremptory challenges, which would be allowed to the defendant under an indictment charging both offenses. Section 13738-b1 was wholly procedural. The qualifying provision made for peremptory challenges was germane to subsection 3. We think no violation of the Constitution was involved.

IV. Substantially all the instructions given by the court were excepted to by the defendant, and the exceptions are here argued. One general complaint directed against each and all of them is that they were inadequate; that they should have been amplified. The attention of the court was not directed to any particular subject upon which the defendant desired amplification. The instructions, as given, covered the issues left in the case. It was the right of the court to be concise. Any concise instruction may be readily assailed for its omissions. Whatever is said therein, yet more might have been said. True, circumstances may have been developed during the trial that fairly call for amplification and specification. Even so, there is some degree of burden upon the defendant's counsel, to bring such matter to the attention of the court. We have read these instructions. In our judgment they are not fairly assailable for want of amplification. The evidence was brief, and most of it was direct. There was nothing therein that was particularly suggestive of the need of amplification.

V. Eighteen alleged errors are assigned, and many of these are divided into several subdivisions. We cannot, within the appropriate limits of an opinion, deal with the details of the argument.

Complaint is made that the first instruction failed to state the issues correctly. It is said that this instruction "seemingly gave the jury authority to consider all the evidence introduced on behalf of the State, some of which was confined solely to count 1". The withdrawal of count 1 was done in the presence of the jury. Instruction No. 1 stated to the jury the fact that count 1 had been withdrawn. Statement of the issues was directed solely to count 2.

Complaint is made of instruction No. 3, because it failed to confine the jury to a consideration of the *signature* of Exhibit

A. Exhibit A was the alleged forged instrument. The evidence was that the handwriting in the body of it was that of the defendant. The complaint is that the jury should have considered no part of this exhibit except the *signature*. What we have already said answers this complaint.

■ Complaint is made of instruction No. 5, in that it submitted to the jury the issue whether the defendant knew of the forgery. The claim is that there was no evidence to justify such instruction. We have already answered herein such contention. It is claimed that such instruction is further erroneous in that it referred the jury in terms to the "check in question". It is said that this statement was confusing because there were numerous checks in the record that were used for the purpose of comparison. The "check in question", within the meaning of the instruction, was Exhibit A, upon which the prosecution was based. No other meaning could have been fairly given to the language used.

■ Complaint is made of instruction No. 6, because it assumed that there was evidence in the record to the effect that the defendant knew the signature of Fred Blotcky. Complaint is further made of this instruction because it permits the jury to speculate and to conjecture, and that it allowed the jury to conclude, if they deemed proper, that the defendant forged the check, Exhibit A. No such permission is to be found in the instruction. It is true that, if the jury should find that the defendant knew that the check was forged, and especially if it should find that the defendant was present when the forgery was done, that fact would tend to excite suspicion that the defendant had an active connection with the forgery. Such was a necessary incident of the case under the evidence. The state was not precluded from using appropriate evidence in support of the charge of *scienter* on the ground that the same evidence tended to create a suspicion of fact, not charged in count 2. It was enough that the court charged the jury that only count 2 was in issue.

Complaint is made of instruction No. 7, in that it charged the jury that they might "take into consideration all of the facts and circumstances, as disclosed by the evidence offered on the trial". It is rather late in the day to assign error upon the use of the language above quoted. Of the instructions usually given to juries in criminal cases, some phrases have been used from the beginning of our judicial history. They have become stereotyped as being usually applicable in some degree to every criminal case. The state-

ment herein quoted is one of such. Of course it must be read in connection with its context, and such context must be appropriate. There is no complaint of its context here.

VI. Complaint is made of misconduct of bailiffs. Upon the selection of the jury, the court ordered that it be segregated. This means that it was to be kept together in charge of a bailiff at times of adjournment. The complaint is that, upon the first adjournment, the jury was taken to a meal by a bailiff, who was not sworn under section 13861. Complaint is made also in that there was an exchange of bailiffs that took place at the same time. It appears that the work of the district court of Polk county is carried on by six district judges, all of whom are engaged in their several courtrooms in the conduct of the business. A bailiff is assigned to each of these judges. Jury rooms are used according to mutual convenience of all the sitting judges. Bailiffs assist each other. The bailiff assigned to the jury in this case was already in charge of another jury in another case. He therefore obtained the aid of another bailiff, who took the jury in the present case to its meal, and returned it thereafter. Both of these bailiffs were sworn officers as deputy sheriffs. They devoted their full time to business of the courts. But, at the time of such exchange of service, to neither of them had been administered the oath provided for by section 13861. The defendant thereupon moved for a discharge of the jury, and considerable colloquy was had between respective counsel and the court. In resistance to the motion, it was made to appear that the conduct of the bailiffs fully conformed to their duties as provided by law, and they had not communicated with the jury, nor permitted any one else to do so. In short, that the duties imposed upon the bailiff on oath under section 13861 were performed in each case. The defendant asked to be permitted to examine the jury on the question, and the court granted the request. Thereupon the defendant withdrew the request and refused to exercise the privilege accorded to him. The court immediately administered the oath. Upon submission of the case, the court also administered to the bailiff the oath required under section 13878. Inasmuch as it is made to appear affirmatively that the irregularity complained of worked no prejudice whatever to the defendant, it would be unduly technical to say that it worked a mistrial of the case. We think that it does not present an adequate ground of reversal.

Many other assignments are argued, but they involve repetition

of the points we have herein already considered. What we have already said is decisive of all of them. A reading of this record can leave no doubt in any candid and disinterested mind that the defendant was guilty of the charge of knowingly uttering the forged instrument, so that every complaint made herein, which is predicated upon absence of proof of any element in the case, cannot be well taken. We have given a very careful reading to the able brief of defendant's counsel, and are firmly convinced that he has no just grievance upon this record.

The judgment of the district court is accordingly affirmed.

CLAUSSEN, C. J., and STEVENS, ALBERT, KINDIG, ANDERSON, KINTZINGER, and DONEGAN, JJ., concur.